**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **JOHN WAYNE BLANTON** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-450** |
| | § | **(4:17-CR-2(1))** |
| **UNITED STATES OF AMERICA** | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is *pro se* Movant John Wayne Blanton's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255, in which he asserts constitutional violations concerning his Eastern District of Texas, Sherman Division conviction and sentence. After reviewing the case, the Court concludes that Movant's § 2255 motion should be denied.

## I. PROCEDURAL BACKGROUND

Movant, along with two co-defendants, were charged in a First Superseding Indictment with one count of Conspiracy to Possess with the Intent to Distribute and Distribution of Marijuana and Cocaine, in violation of 21 U.S.C. § 846 (Count One). Crim. ECF (Dkt. #90).[1] Movant proceeded to trial, and after a four-day trial, was found guilty by a jury of Count One of the First Superseding Indictment on February 9, 2018. Crim. ECF (Dkt. #124). Movant filed a Motion for Judgment of Acquittal on February 22, 2018. Crim. ECF (Dkt. #132). On August 6, 2018, the Court denied the Motion for Judgment of Acquittal. Crim. ECF (Dkt. #183). Movant was sentenced on August 9, 2018, to 235 months' imprisonment, to be followed by five years of supervised release. Crim. ECF (Dkt. #184 & 204). Judgment was entered that same day. Crim. ECF (Dkt. #185). Movant filed a

---

[1] In referencing this habeas action, the Court will reference the docket as (Dkt. # ___). When referencing the criminal action, the Court will reference the docket as Crim. ECF (Dkt. # ___).

Notice of Appeal on August 23, 2018. Crim. ECF (Dkt. #187). Movant appealed his sentence on two grounds: (1) that the Court erred by enhancing his offense level pursuant to U.S.S.G. § 2D1.1(b)(1) based on his coconspirator's alleged possession of a firearm and (2) that the Court abused its discretion in imposing, as part of its written judgment, the financial-reporting special condition because it did not orally pronounce the condition at his sentencing. *Id.* On January 19, 2021, the Fifth Circuit Court of Appeals affirmed the sentencing enhancement and remanded to the Court for the limited purpose of ensuring that Movant's condition of supervised release is consistent with the Court's oral pronouncement at sentencing. Crim. ECF (Dkt. #253); *United States v. Blanton*, 833 F. App'x 595 (5th Cir. 2021). On remand, the Court determined that the financial-reporting special condition of Movant's term of supervised release was disclosed to Movant and his counsel as part of his Presentence Investigation Report ("PSR"), giving Movant and his counsel ample opportunity to object to the proposed condition prior to sentencing. Crim. ECF (Dkt. #252).

Movant filed the above-referenced motion to vacate, set aside, or correct sentence on June 14, 2021. (Dkt. #1). Movant asserts the following claims of ineffective assistance of counsel:

1. Counsel failed to subpoena or call critical (or any) defense witnesses.
2. Counsel failed to reasonably cross-examine the Government's witness.
3. Counsel failed to reasonably prepare for trial.

*Id.* On April 6, 2023, the Government was ordered to show cause (Dkt. #3) and filed a Response on August 4, 2023 (Dkt. #8). The Government argues that all of Movant's claims lack merit. *Id.* To date, Movant has yet to file a reply.

## II. FACTUAL BACKGROUND

The following excerpt was taken from the Court's Memorandum Opinion and Order denying Movant's Motion for Judgment of Acquittal, Crim. ECF (Dkt. #183):

> . . . With respect to [Movant] and the cocaine, the following evidence was presented: (1) Rufus Rodgers' testimony; (2) Jared Turner's testimony; (3) the two kilograms of cocaine seized on November 16, 2010; and, (4) the text message in Billy Wayne Gamble's cell phone.
>
> Rufus Rodgers testified that he supervised an organization that transported large amounts of marijuana from Arizona to Texas. Rodgers used horse trailers to transport the drugs and testified that it was important for his drivers to have a good cover story in the event they were stopped by law enforcement. Rodgers met John Gandy Jr. ("Red") through [Movant], who was Gandy Jr.'s partner in the distribution of cocaine and marijuana. Rodgers testified that he sold a horse trailer with a hidden compartment in it to [Movant]. Co-conspirator Jared Turner corroborated Rodgers, testifying that [Movant] had drug customers in Oklahoma and was involved in the cocaine business. Rodgers' and Turner's testimony together established that [Movant] and Gandy Jr. were involved with transporting cocaine to Oklahoma.
>
> Notably, Rodgers testified that [Movant] told him that he and Gandy Jr. suffered a "loss" in their drug business when drugs were seized by law enforcement on the highway between Texas and Oklahoma. The government presented evidence of that loss; it occurred on November 16, 2010. On that date Gandy Jr.'s father — John Gandy Sr. — was stopped by Sherman police as he was driving a Chevy Impala in Sherman, Texas, on I-75 —the highway, which when taken north leads straight to Oklahoma. Sherman police officer (Michael Young) testified that Gandy Sr. told him that he had come from his son's (Gandy Jr.) house in Arlington, Texas. Young testified that a drug dog alerted on the Impala Gandy Sr. was driving, which led Young to find and seize two kilograms of cocaine in the trunk of the Impala. Gandy Sr. was arrested, and the Impala was impounded.
>
> The Court instructed the jury that it was permitted to draw reasonable inferences from the testimony and make deductions and reach conclusions from the fact based on reason and common sense. *See* Jury Instructions (Dkt. No. 123) at 422. The jury did just that in connection with the testimony of Rufus Rodgers, Jared Turner and the cocaine seizure on November 16, 2016 by rationally concluding that the "loss" that Gandy Jr. and [Movant] had described suffering on the highway connecting Texas and Oklahoma referred to the two kilograms of cocaine that was seized from

> the Impala that Gandy Sr. was driving on November 16, 2010. Again, Gandy Sr. told police that day that he had traveled from Gandy Jr.'s, house in Arlington on his way to Oklahoma.
>
> The jury also heard evidence connecting the manner and means used by various conspirators in furthering the business of drug trafficking. For example, one of those conspirators, Charles Allen Raymond, testified that he was a driver who worked for Rufus Rodgers to transport marijuana from Arizona to Texas. As discussed earlier, Rodgers had sold a horse trailer with a hidden compartment in it to [Movant] — Gandy Jr.'s partner in the cocaine/marijuana business. The timing of [Movant's] purchase of the horse trailer with the hidden compartment in it was important. Rodgers testified that he sold the trailer to [Movant] shortly after [Movant] and Gandy Jr. told him that they had suffered a "loss" in their cocaine/marijuana business on the highway between Texas and Oklahoma — no doubt referring to the cocaine seizure of November 16, 2010, in Sherman along I-75. Using common sense, the jury could have rationally concluded that [Movant] and Gandy Jr., frustrated by the November 2010 seizure, thought that the horse trailer would be a better, more secure, way to secrete contraband.
>
> Along with the testimony of Rufus Rodgers, Jared Turner and the cocaine seizure on November 16, 2010, a text message related to cocaine was located in Billy Wayne Gamble's phone. The evidence at trial (testimony from Sgt. Danny Fletcher and DEA SA Dave Phillips) established that Bill Wayne Gamble lived in the trailer on the ranch at Parkerville Road, DeSoto, Texas controlled by [Movant]. Other text messages in Gamble's phone indicated that [Movant] ("the old man") was supplying Gamble with drugs. Consequently, when the following text message was also found in Gamble's phone, it was reasonable to infer that the message related to cocaine supplied to Gamble by [Movant]: "If I had any idea wats in that Mexican (expletive deleted) I wud cook it but I don't and I can't afford to pay to." Gov't Ex. 45, p. 86. Expert testimony established that the drug most commonly referred to in this context (a substance from Mexico that one can "cook") is cocaine.

*Id.* at 4-5 (citing Crim. ECF DKt. #135 at pp. 4-7).

## III. STANDARD OF REVIEW

The first paragraph of 28 U.S.C. § 2255 sets out the claims that are cognizable under the statute. These are: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was

in excess of the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack.

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164-65 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991). A defendant can challenge his conviction or sentence after it is presumed final on issues of constitutional or jurisdictional magnitude only, and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the errors. *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors. It is reserved for transgression of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1995). Further, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978)).

## IV. ANALYSIS

In order to establish ineffective assistance of counsel, Movant must prove that counsel's performance was deficient and that the deficient performance prejudiced Movant's defense. *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984). Because Movant must prove both deficient

performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. As a result, there is a strong presumption that counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned trial strategy. *Id.; United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009). To overcome the presumption that counsel provided reasonably effective assistance, Movant must prove that his attorney's performance was objectively unreasonable in light of the facts of the movant's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689-90; *Fields*, 565 F.3d at 294.

In addition to proving that counsel's performance was deficient, Movant is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Mere allegations of prejudice are insufficient; the movant must affirmatively prove, by a preponderance of the evidence, that he was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

**A. Counsel Failed to Subpoena or Call Critical (or any) Defense Witnesses**

Movant asserts that it was unreasonable for counsel to not call Johnny Gandy Sr. ("Gandy Sr."), Billy Gamble ("Gamble"), John Perfeti ("Perfeti"), Johnny Gandy Jr. ("Gandy Jr."), Arerra Hildreth ("Hildreth") and unnamed character witnesses to testify. According to Movant, all of these witnesses would have testified to his innocence or, at least, created reasonable doubt in the

minds of the jurors. To receive relief here, Movant must show that: had counsel investigated, he would have found witnesses to support the defense; such witnesses were available, had counsel located and called them; their testimony would have been favorable; and they would have been willing to testify on Movant's behalf. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). A petitioner must overcome a strong presumption that his counsel's decision in not calling a particular witness was a strategic one. *Murray v. Maggio, Jr.*, 736 F.2d 279, 282 (5th Cir. 1984). Where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance are viewed with great caution. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983).

Here, with the exception of Perfeti, Movant fails to show that these witnesses were available and willing to testify and would have provided testimony favorable to his defense. As to Perfeti, he actually testified on behalf of the Government and was subject to cross-examination by Movant's defense counsel. Trial counsel was able to establish on cross-examination that no marijuana, drug ledgers, drug notes, drug paraphernalia, money, or weapons were found inside Movant's residence. Crim. ECF (Dkt. #202 at 146-148). This is exactly what Movant alleges counsel failed to do and the record refutes Movant's assertion.[2] With respect to the remaining witnesses, Movant fails to

[2] Movant states, with respect to Perfeti: "[Perfeti] could testify no evidence was found either at [Movant's] home or place of business. [Perfeti] could also testify that the paraphernalia found at [Movant's] rental property was exclusively claimed by [Movant's] tenant, [Gamble]." (Dkt. #1, at 15). Although less than clear, to the extent Movant challenges counsel's failure to cross-examine Perfeti on the latter specific point, Movant fails to show how he was prejudiced by any such failure in light of the overwhelming evidence against him.

provide an affidavit from every witness stating not only their willingness to testify on his behalf, but also the substance of such testimony had they been called to testify for the defense. The *Strickland* standard requires this specific showing for uncalled-witness claims: "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that his testimony would have been favorable, but also that the witness would have testified at trial." *Alexander*, 775 F.2d at 602. Movant, here, has wholly failed in his burden to demonstrate that these witnesses were available and willing to testify. For this reason, Movant's claim of ineffective assistance of counsel for uncalled witnesses fails.

Movant also appears to allege that counsel was ineffective in advising him that it was not necessary for him to testify at trial. Movant states, "[Movant] himself wanted to testify during his trial. On several occasions [Movant] made this request to his trial attorney. [Movant's] attorne[y] insisted that [sic] was not necessary to testify given the weakness of the Government's case against him. Had [Movant] testified, the jury would have heard directly from [Movant], who could have explained all the details of this complex case, including the crucial details necessary to prove his innocence." (Dkt. #1 at 17).

Criminal defendants have the right to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987). Only the defendant may waive this well-established right. *United States v. Brown*, 217 F.3d 247, 258 (5th Cir.2000). When a defendant claims that trial counsel interfered with his right to testify and was thus ineffective, the claim is governed by the *Strickland* standard. *United States v. Harris*, 408 F.3d 186, 192 (5th Cir.2005); *United States v. Mullins*, 315 F.3d 449, 452–53 (5th Cir.2002). It is unclear whether Movant is alleging that defense counsel prevented him from

testifying or advised him not to testify; Movant has not provided a sworn statement on this issue.[3] Even assuming that Movant stated his desire and intent to testify and defense counsel specifically ignored his request, Movant has failed to prove the second prong of *Strickland* because he has not shown prejudice as a result of this decision. Specifically, Movant has not identified the facts that were unknown to counsel that would have been elicited through his testimony and that would have benefitted his defense. In short, Movant has not shown a reasonable probability that the outcome of his trial would have differed if he had testified. This claim lacks merit.

**B. Counsel Failed to Reasonably Cross-Examine the Government's Witness**

Movant argues that counsel failed to ask Cooperating Defendant Rufus Rodgers ("Rodgers") about his cooperation with the Government and Movant's purchase of a horse trailer. Movant alleges further that his counsel should have cross-examined an unnamed Cooperating Defendant ("CD2″) on his testimony.

Because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *Kroma v. United States*, Nos. 4:18-CV-823, 4:14-CR-165, 2021 WL 2229733, at *12 (E.D. Tex. Mar. 2, 2021) (quoting *Dunham v. Travis*, 313 F.3d 724, 732 (5th Cir. 2002)), *report and recommendation adopted*, 2021 WL 2229746 (E.D. Tex. June 2, 2021); *see Strickland*, 466 U.S. at 690 ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). A defendant cannot establish ineffective counsel based on the cross-examination of a witness absent a showing that further impeachment would have changed the jury's verdict. *Russell v. Collins*, 944 F.2d 202, 206 (5th Cir.

---

[3] Movant attached a typed document to his form application laying out his specific claims. The document is not verified.

1991). A defendant must establish what testimony further cross-examination would have elicited and how it would have changed the outcome of the case to establish a claim of ineffective assistance of counsel. *Day v. Quarterman*, 566 F.3d 527, 539–40 (5th Cir. 2009).

With respect to the unidentified CD2 witness, the Court cannot identify what witness Movant is referencing in order to evaluate the testimony. Movant's claim of ineffective assistance of counsel for failing to cross-examine the unnamed CD2 witness must be denied as conclusory. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."). Alternatively, any such claim must be denied, as Movant does not allege how further cross-examination of this unidentified witness would have changed the outcome of his case; namely, Movant has failed to show prejudice.

As to Rodgers, the record directly refutes Movant's assertion that counsel failed to cross-examine him about his cooperation with the Government. Crim. ECF (Dkt. #201 at 91-101). Counsel not only cross-examined Rodgers about his cooperation and his history of drug dealing, but also elicited testimony that he received substantial reductions from his guideline sentence for his cooperation. Counsel was not ineffective in this regard. With respect to Movant's claim that counsel failed to cross-examine Rodgers about Movant's purchase of the horse trailer, Movant does not demonstrate how cross-examination of Rodgers about the horse trailer would have changed the outcome of his case.[4] Again, the evidence of Movant's guilty was substantial. The weight and credibility of evidence is within the sole province of the jury. *United States v. Martinez*, 975 F.2d 159,

---

[4] Movant argues that counsel should have challenged Rodgers on the title paperwork for the trailer, which would allegedly show Movant did not own the trailer. Movant, however, ignores all of the other testimony by Rodgers and other witnesses regarding Movant's illicit activity with the trailer, which was clearly under his dominion and control.

160-61 (5th Cir. 1992). It was up to the jury to determine if it believed Rodgers's testimony and the weight to be given to the testimony. Movant has not demonstrated prejudice from counsel's alleged error in failing to cross-examine Rodgers about the horse trailer.

### C. Counsel Failed to Reasonably Prepare for Trial

Finally, Movant complains that counsel failed to reasonably prepare for trial when he met with Movant one week before trial was to commence and failed to communicate with his family. Standing alone, brevity of consultation time between the defendant and his counsel cannot support a claim of ineffective assistance of counsel. *Murray v. Maggio*, 736 F.2d 279, 282-83 (5th Cir. 1984). To the extent Movant argues that counsel failed to reasonably prepare for trial for other unspecified reasons, this claim is conclusory. *Ross*, 694 F.2d at 1012. Regardless, Movant does not demonstrate how he was prejudiced by counsel's alleged lack of preparation for trial. The record in this case reflects that counsel was well-prepared, engaged in vigorous cross-examination of the witnesses, and fully advocated for his client. As outlined above, the evidence of Movant's guilt was overwhelming. This claim of ineffective assistance of counsel is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, this Court, nonetheless, addresses whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best

position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.”).

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a “substantial showing of the denial of a constitutional right” in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate “that reasonable jurists would find the district court’s assessment of the constitutional claims debatable or wrong.” *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of Movant’s § 2255 motion on substantive or procedural grounds, nor could they find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, Movant is not entitled to a certificate of appealability.

## VI. CONCLUSION AND ORDER

In sum, Movant’s claims of ineffective assistance of counsel lack merit. It is therefore **ORDERED** that the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255

is **DENIED**. A certificate of appealability is **DENIED.** It is further **ORDERED** all motions by either party not previously ruled on are **DENIED**.

**SIGNED this 23rd day of September, 2024.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE